**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **TONY BASS,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | ) |
| | ) |
| **JOHN E. POTTER, in his official capacity** | ) |
| **as Postmaster General of the United** | ) |
| **States Postal Service, UNITED STATES** | ) |
| **POSTAL SERVICE,** | )  Case No. 05-CV-220-TCK-FHM |
| | ) |
| | ) |
| **Defendant.** | ) |

**OPINION AND ORDER**

Before the Court is Defendant's Motion To Dismiss Plaintiff's FMLA Claim (Docket No. 14).[1] Plaintiff's Complaint alleges that Plaintiff's termination from his employment with Defendant violated the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq.* Specifically, Plaintiff alleges that Defendant terminated him based on absences that were covered by the FMLA, in violation of 28 U.S.C. § 2612(a)(1)(D), which states that an eligible employee shall be entitled to a total of twelve workweeks of leave during any twelve month period "for a serious health condition that makes the employee unable to perform the functions of the position of such employee." Defendant has moved to dismiss on grounds that Plaintiff's claim is barred by the two-year statute of limitations. *See* 28 U.S.C. §2617(c)(1). Plaintiff claims he is entitled to a three-year statute of limitations because the violation was "willful." *See* 28 U.S.C. §2617(c)(2). The jurisdictional

---

[1] By Order dated April 3, 2006, the Court converted the motion to dismiss to one for summary judgment and gave Plaintiff an opportunity to respond accordingly. (*See* Docket No. 28.)

1

question of whether Plaintiff can establish a "willful" violation of the FMLA, and therefore receive the benefit of the longer statute of limitations, is the sole issue for determination.

I.     Statement of Facts[2]

Plaintiff was first employed by Defendant in 1993. Beginning in 1997, Defendant took several disciplinary actions against Plaintiff. On January 23, 1997, Plaintiff received a notice of suspension for absence without official leave and for failure to follow instructions. In November of 1997, Plaintiff received a letter of warning for failure to maintain a proper work schedule. On June 25, 1998, Plaintiff was issued a seven-day suspension due to his failure to maintain a proper work schedule. On December 22, 1998, Plaintiff was again issued a seven-day suspension due to his failure to maintain a proper work schedule. On December 22, 1999, Plaintiff received a letter of warning for sleeping on the clock. On September 2, 2000, Defendant initiated a "removal action" against Plaintiff. On December 5, 2000, Defendant issued a "Last Chance Agreement" to Plaintiff, which was an agreement in lieu of removal and which was a "final opportunity" to afford Plaintiff continued employment with Defendant. When Plaintiff signed the Last Chance Agreement, the removal action was held in abeyance, to be rescinded upon satisfactory completion of the terms of the Last Change Agreement. Under the terms of the Last Chance Agreement, "any instance of failure to maintain a regular attendance or to abide by the attendance and leave requirements" was a breach of the agreement and would result in "immediate termination."

On August 28, 2001, Plaintiff first submitted medical certification of a "serious health condition" due to exacerbations of chronic low back pain. This initial certification states that

---

[2] The facts as stated by the Court are either undisputed or viewed in the light most favorable to Plaintiff.

2

Plaintiff was not "currently incapacitated" but was advised to "avoid heavy lifting, pushing, pulling, etc."

On February 20, 2002, Plaintiff acknowledged in writing that he was in breach of the Last Chance Agreement due to further attendance problems. Defendant, however, offered an eight-month extension of the Last Chance Agreement, as another "last opportunity" to allow Plaintiff to correct his attendance problems.

On March 6, 2002, Plaintiff called in and stated he was taking FMLA leave. On March 7, 2002, Mr. Jack Lapp, Acting FMLA Coordinator for Defendant, sent Plaintiff a letter stating that (1) the last FMLA certification on file (the August 28, 2001 certification) was incomplete because it did not state the frequency or duration of the condition, (2) that Plaintiff had accrued 16 unscheduled absences for the previous 90-day period, and (3) that Plaintiff needed to submit a certification that contained information relevant to the frequency and duration of his condition. The letter stated that Plaintiff must furnish the requested documentation within fifteen calendar days after receipt of the letter and that failure to produce the certification would result in unprotected leave. The letter also stated that if Plaintiff could not provide the certification by March 23, 2002, Plaintiff must contact Mr. Lapp to arrange for a reasonable time within which to provide it. Mr. Lapp also arranged for a personal meeting with Plaintiff, during which Mr. Lapp explained to Plaintiff there were problems with the August 2001 certification.

On March 21, 2002, Plaintiff timely submitted a second certification.[3] This certification also was viewed by Defendant as incomplete and inadequate due to failures to answer questions

---

[3] The certification attached as Plaintiff's Exhibit 4 is dated 3/20/02 and has a "received" date of 3/21/02. The certification attached as Defendant's Exhibit 10 does not contain the "received" notation.

regarding frequency and duration.[4] On March 28, 2002, Linda Daniels, FMLA Coordinator for Defendant, notified Plaintiff by letter that he had been scheduled for a FMLA review and consultation to "review your FMLA documentation and discuss any discrepancies and/or areas that need clarification." (*See* Plf.'s Am. Resp., Ex. 5.) This meeting occurred on April 2, 2002. At that time, Plaintiff was directed to the perceived deficiencies regarding frequency and duration. Plaintiff admits that he was verbally told of an April 16, 2002 deadline for the certification, but that he believed he could bring it by that date or "as soon as practical." (*See* Bass Depo. 201:1-20.)[5] In his deposition, Plaintiff admitted that the deficiencies complained of by Ms. Daniels regarding the March 21, 2002 certification were the same deficiencies complained of by Mr. Lapp regarding the August 28, 2001 certification.

On April 4, 2002, Plaintiff contacted his health care provider to arrange an appointment. An appointment was not available until April 23, 2002. Plaintiff therefore did not meet the April 16 deadline. According to Plaintiff, Plaintiff informed someone who works for Ms. Daniels that he could not get an appointment until April 23, 2006 and would therefore not get his certification in by

---

[4] Plaintiff points out that the March 21, 2002 certification did indicate that Plaintiff had previously experienced four to six exacerbations of back pain per year. However, Defendant deemed the form as inadequate to inform Defendant of the frequency and duration of the condition and informed Plaintiff of the inadequacies. In any event, the substantive decision that the March 21, 2002 form was inadequate is not the basis of Plaintiff's assertion that any alleged violation was willful in nature. Instead, as explained below, Plaintiff argues that willfulness is present based on the setting of "arbitrary" deadlines and failure to consider the certification ultimately submitted on April 29, 2002. To the extent Plaintiff does argue that willfulness is evidenced by Defendant's deeming the March 21, 2002 form inadequate, the Court finds Plaintiff cannot show that this decision, which is a judgment call of the FMLA supervisor based on the type of information provided, amounts to any type of "willful" violation of the FMLA.

[5] Ms. Daniels made a handwritten notation on her copy of the April 2, 2002 letter that states "clarification due back by 4/16."

4

April 16.[6] From March 7, 2002 until his appointment on April 23, 2002, Plaintiff was absent from work twelve days, including the deadline of April 16, 2002. According to Plaintiff, he called in on all but one of these occasions.

On April 18, 2002, upon non-receipt of a completed certification by the April 16, 2002 deadline, Ms. Daniels sent a letter to Plaintiff stating that his FMLA leave was disapproved based on his failure to submit the documentation within the agreed upon time and his failure to indicate he was having difficulty in meeting the deadline. The letter further advised Plaintiff that eleven absences would be changed to reflect "disapproved" FMLA leave.

On April 23, 2002, a "Disciplinary Action Request" was proposed by Plaintiff's supervisor, based on Plaintiff's failure "to document his unscheduled absences and late or no call-ins since March 6, 2002."

On April 29, 2002, Plaintiff returned to work and submitted a third certification, which was completed by a physician's assistant at his doctor's appointment on April 23, 2002. According to the deposition testimony of Ms. Daniels, this certification cured the deficiencies in his previous submissions and, had she received it timely, she would have accepted it and approved Plaintiff's FMLA leave requests for the days in question.

Also on April 29, 2002, Manager of In Plant Support, Rick Shirley, gave a letter to Plaintiff entitled "Notice of Proposed Removal," informing him that it had been proposed that he be removed as a postal employee based on his unscheduled (and non-FMLA approved) absences from March 6, 2002 to April 17, 2002, which resulted in a violation of the extended Last Chance Agreement.

---

[6] Ms. Daniels and the two people who take her messages denied receiving such a message, but the Court assumes such calls were made for purposes of summary judgment.

Plaintiff alleges, and it appears to be undisputed, that the April 29, 2002 submission was not considered prior to the decision to issue the Notice of Proposed Removal.

After a meeting with Plaintiff and his representative on May 10, 2002, Plant Manager Ron Mask determined that removal was appropriate and issued a "Letter of Decision" on May 31, 2002, which removed Plaintiff from employment with Defendant. Plaintiff filed this lawsuit pursuant to 29 U.S.C. § 2601, *et seq.*, on April 21, 2005.

III.   Summary Judgment Standard

The Court previously concluded that it was proper to convert Defendant's motion pursuant to Rule 12(b)(6) to one for summary judgment pursuant to Rule 56. Based on this conclusion, the Court gave Plaintiff the opportunity to file an amended response that treats Defendant's motion as one for summary judgment, in order to ensure that Plaintiff had notice and opportunity to present countervailing evidence. (*See* Docket No. 28 (setting forth case law and justification for conversion of motion).) Plaintiff filed an Amended Response on April 17, 2006, and Defendant filed an Amended Reply on April 24, 2006.

A motion for summary judgment is properly granted "if there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56©. In applying this standard, the Court must view the evidence and draw all inferences in a light most favorable to the party opposing summary judgment, but that party must identify sufficient evidence which would require submission of the case to a jury. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249-52 (1986); *Mares v. ConAgra Poultry Co.,* 971 F.2d 492, 494 (10th Cir. 1992). Where the non-moving party will bear the burden of proof at trial on a dispositive issue, that party must go beyond the pleadings and identify specific facts which demonstrate the existence of an issue

to be tried by the jury. *See Mares*, 971 F.2d at 494.

In the context of the question of "willfulness" under the FMLA, "the plaintiff bears the burden of proving "willfulness." *See Gilligan v. City of Emporia, Kan.*, 986 F.2d 410, 413 (10th Cir. 1993) (in context of FLSA); *Porter v. New York University School of Law*, 392 F.3d 530, 532 (2d Cir. 2004) (affirming grant of summary judgment because facts alleged by plaintiff "cannot conceivably amount to willful behavior"); *Packard v. Continental Airlines*, 24 Fed. Appx. 960, 961-62 (10th Cir. 2001) (unpublished) (affirming dismissal of plaintiff's case where plaintiff "has shown, at best, negligence on the part of defendant"). Thus, the Court must determine if the facts as alleged by Plaintiff and construed in the light most favorable to Plaintiff are sufficient to create a question of fact on the question of willfulness.

IV.     Analysis

Plaintiff was terminated on May 31, 2002. Plaintiff filed this action on April 21, 2005. It is therefore undisputed that Plaintiff failed to file his FMLA claim within the typical two-year statute of limitations for claims brought under the FMLA. *See* 28 U.S.C. § 2617(c)(1). However, the FMLA also provides that if a plaintiff alleges a "willful" violation of the FMLA, the action may be brought within three years of the last event constituting the alleged violation. *See* 28 U.S.C. §2617(c)(2).

The FMLA does not define the word "willful." In interpreting the FMLA's "willfulness" standard for purposes of the statute of limitations, circuit courts have adopted the reasoning in the Supreme Court's decision in *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 132 (1988), which interpreted similar language contained in the Fair Labor Standards Act ("FLSA"). *See Packard*, 24 Fed. Appx. at 961; *Hoffman v. Professional Med Team*, 394 F.3d 414, 417 (6th Cir. 2005); *Porter*,

392 F.3d at 532; *Hilstrom v. Best Western TLC Hotel*, 354 F.3d 27, 33-34 (1st Cir. 2003). Under this interpretation, wilfulness "is generally understood to refer to conduct that is not merely negligent." *Packard*, 24 Fed. Appx. at 961. Thus, a plaintiff wishing to avail himself of the longer three-year statute of limitations must show that the employer either "knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *Id.*; *see also Hoffman*, 394 F.3d at 417 ("[T]he standard for willfulness under the FMLA extended statute of limitations is whether the employer intentionally or recklessly violated the FMLA."). If an employer acts reasonably in determining its legal obligation, its actions cannot be deemed willful. Even if an employer acts unreasonably, but not recklessly in determining its legal obligations, then the employer's conduct also should not be considered willful. *See Porter*, 392 F.3d at 531-32 (citing *McLaughlin*).

In an attempt to show willfulness, Plaintiff argues that "Defendants used the April 16, 2002 deadline it had arbitrarily imposed upon Plaintiff to submit updated medical certification as an excuse to categorically deny Plaintiff's requests for FMLA leave and to terminate his employment. Thus, Defendant terminated Plaintiff's employment before receiving Plaintiff's updated medical certification or reviewing its sufficiency, or allowing a reasonable time period to submit the medical certification." (Plf.'s Am. Resp. at 7.) Plaintiff essentially argues that Defendant intentionally or recklessly disregarded its obligations under the FMLA because it set an unreasonable fourteen-day deadline of April 16, 2002 for the completed certification, and then failed to consider the medical certification ultimately provided by Plaintiff upon his return to work on April 29, 2002, which undisputedly corrected any deficiencies in his previous certifications.

As set forth above, there was a chain of specific events leading to Defendant's decision to

classify the absences occurring in March and April of 2002 as non-FMLA leave, which in turn led to Plaintiff's termination. This chain of events included (1) a letter and personal meeting with Mr. Lapp in early March 2002, which resulted in Plaintiff's submission of a timely but deficient certification on March 21, 2002, and (2) a letter and personal meeting with Ms. Daniels on April 2, 2002, which resulted in a deadline of April 16, 2002 to submit a "clarified" or cured certification.[7] In these two communications, there can be no question that Defendant made Plaintiff aware of his rights under the FMLA, that Defendant was attempting to comply with its obligations under the FMLA, and that Defendant was, in fact, complying with what it deemed to be the relevant guidelines under the FMLA. Defendant asserts that it was operating pursuant to 29 C.F.R. § 825.305(d), which provides that an "employer shall advise an employee whenever the employer finds a certification incomplete, and provide the employee a *reasonable opportunity* to cure any such deficiency." *Id.* (emphasis added). In the course of the two meetings and the setting of the two deadlines, Defendant was providing Plaintiff with a "reasonable opportunity" to cure the perceived deficiencies in his certification. There is nothing about Defendant's conduct that evidences that it knew or should have known its conduct in setting the April 16, 2002 deadline was in violation of the FMLA. To the contrary, Defendant was taking measured and specific steps to ensure that Defendant allowed Plaintiff "reasonable" opportunities to cure the perceived deficiencies, as required by the FMLA regulations. The notifications were not limited to written communications but also included a face-to-face meeting with Ms. Daniels on April 2, 2002.[8]

---

[7] Plaintiff alleges, and the Court accepts for purposes of this motion, that Plaintiff believed this was a loose deadline and that he could submit his certification as soon as practical.

[8] Plaintiff asserts that Defendant was not operating pursuant to 29 C.F.R. § 825.305(d) but that Defendant was making a request for an initial certification pursuant to 29 C.F.R. §

By April 18, 2002, when the decision was made to classify certain absences as non-FMLA absences, Ms. Daniels had not received the requested documentation from Plaintiff. Nor had Ms. Daniels spoken with Plaintiff. Even assuming, as Plaintiff alleges, that Ms. Daniels was informed by her assistants that Plaintiff could not get a doctor's appointment until April 23, 2002, the Court concludes that the decision to classify the leave as non-FMLA on April 18, 2002 was, at most, unreasonable or overly rigid, but is not sufficiently intentional or reckless to give rise to a "willful" violation.[9] From the perspective of Defendant, Defendant had provided two opportunities and over a month to cure the deficiencies, and had therefore provided Plaintiff with "reasonable opportunities" to correct the problem. Ms. Daniels' decision to deny leave at this point evidences nothing more than an adherence to what she perceived to be a firm deadline for compliance, and does not evidence an intentional attempt to violate the FMLA.

---

825.305(b) or recertification under 29 C.F.R. § 825.308(d), both of which require an employer to allow a minimum of fifteen days for compliance. Plaintiff therefore argues that Ms. Daniel's allowance of only fourteen days from the April 2 meeting to the April 16 deadline evidences a willful violation. The Court concludes it is not necessary, for purposes of determining willfulness, to decide whether Defendant was requesting a certification, a recertification, or to cure a deficient certification. Even if Defendant was actually or should have been operating pursuant to 29 C.F.R. § 825.305(b) or 29 C.F.R. § 825.308(d), Defendant was, at most, negligent in allowing fourteen, instead of fifteen, days for Plaintiff's compliance. This type of error by an employer simply does not evidence the type of intentional or reckless disregard that is required for a "willful" violation.

[9] The factual dispute regarding whether a phone call was made to inform Defendant that he would be unable to meet the deadline would be important to the question of whether a violation actually occurred. *See Peter v. Lincoln Tech. Institute*, 255 F. Supp. 2d 416, 441 (E.D. Pa. 2002) (stating that in determining whether it was not practicable under the circumstances for employee to submit timely certification despite good faith efforts of employee, an employee must "at least . . . contact his employer by telephone and make it aware that he is unable to return his certification before the deadline"). However, Plaintiff in this case must show more than a mere potential violation but must also show that the alleged potential violation could be viewed as willful.

On April 29, 2002, when Plaintiff did submit the completed certification, Defendant chose not to accept it and to proceed with disciplinary action against Plaintiff. Case law indicates that an employer may deny FMLA leave even where an employee ultimately (although untimely) presents the employer with a proper certification:

> The requirement that an employee return his FMLA certification within a reasonable time or else lose his entitlement to FMLA fulfills Congress' desire to balance the demands of the workplace with the needs of families. The FMLA protects an employee from losing his leave when his certification is reasonably delayed and protects an employer from the unreasonable burden of indefinitely maintaining records of potentially eligible but unclaimed FMLA leave. . . . Accordingly, the court concludes that an employer may deny FMLA leave where the employee has failed to timely submit the required certification unless timely submission was not reasonably possible under the employee's particular facts and circumstances.

*See Washington v. Fort James*, 110 F. Supp.2d 1325, 1331 (D. Or. 2000). Although there are "particular facts and circumstances" that must be considered when the issue is whether a violation occurred at all, *see id.,* the issue before this Court is whether a question of fact exists as to whether a "willful" violation has occurred. The above case law holding that denial of FMLA leave is appropriate, in some circumstances, based on a missed deadline for certification is sufficient for the Court to conclude that Defendant did not know its conduct in failing to accept the certification submitted on April 29, 2002 violated the law or acted with reckless disregard as to whether its conduct violated the law. Instead, Defendant was adhering to a deadline it set for compliance. Plaintiff's evidence shows, at most, that such adherence was unreasonable, given that Plaintiff was under the impression that the April 16 deadline was "loose" and that he did ultimately comply with Defendant's request within a few weeks of the deadline. Plaintiff has presented no evidence,

11

however, that could support a finding of willfulness.[10]

In short, Plaintiff has not created a question of material fact as to whether Defendant, either in imposing certain FMLA deadlines on Plaintiff or taking disciplinary action when these FMLA deadlines were not met, knew or showed reckless disregard for the matter of whether its conduct was prohibited by the FMLA. Instead, Defendant spent time, resources, and energy to ensure that Plaintiff received notice and reasonable opportunities to submit a cured certification. Plaintiff failed to timely meet what Defendant perceived as a firm deadline after being given a reasonable opportunity to comply, and Defendant took action. The Court concludes that Defendant's actions under the circumstances were reasonable attempts to comply with the FMLA. Even assuming, however, that Defendant's actions of refusing to consider the late submission or refusing to consider Plaintiff's reasons for the late submission, were unreasonable or resulted in violations of the FMLA, there is simply no evidence in the record to conclude that such refusal could potentially be viewed as a willful violation, such that Plaintiff is entitled to the three-year statute of limitations. *See, e.g., Poteet v. Potter*, No. IP00-0712, 2005 WL 1115805, at * 23 (S.D. Ind. 2005) (where employer repeatedly advised Plaintiff of his obligations under the FMLA and gave him opportunities to provide documentation, employer has not acted intentionally or in reckless disregard its obligations under the FMLA).

Accordingly, Plaintiff is not entitled to the three-year statute of limitations, and Plaintiff's claim is barred by the two-year statute of limitations. Defendant's Motion To Dismiss Plaintiff's

---

[10] In the Court's view, such decision was likely not even unreasonable under the circumstances, given Plaintiff's poor employment history and the fact that Plaintiff was employed on a probationary basis pursuant to a "Last Chance Agreement." In any event, Plaintiff has not presented sufficient evidence that the alleged violation exceeded unreasonableness and in fact was intentional or reckless.


FMLA Claim (Docket. No. 14), which the Court construes as a motion for summary judgment, is hereby GRANTED.

ORDERED this 7th day of June, 2006.

*Terence Kern*
_____
**TERENCE  KERN
UNITED STATES DISTRICT JUDGE**